### GENERAL ELECTRIC CO. v. ALLIS–CHALMERS CO.

(Circuit Court, D. New Jersey. December 27, 1911.)

PATENTS (§ 328*)—INFRINGEMENT—ELECTRIC MOTOR CONTROLLER.

The Knight and Darley patent, No. 554,276, for a controller for a dynamo electric machine, claim 6, the chief element of which is a blowout magnet for the purpose of extinguishing arcs which are formed whenever the electric circuit is broken, and the invention if any residing in the particular place of the location of the magnet and its armature, in view of the prior art is limited to the very form of construction shown. As so limited, it is not infringed by the device of the Stull patent No. 873,805, which shows a different organization of the magnetic ·system.

Suit in equity by the General Electric Company against the Allis-Chalmers Company. On final hearing. Decree for defendant.

L. F. H. Betts and Ramsay Hoguet, for complainant.

Clifton V. Edwards, Thomas F. Sheridan, and Lawrence K. Sager, for defendant.

CROSS, District Judge. On February 11, 1896, patent No. 554,276 was issued to Walter H. Knight and John W. Darley, Jr., for a con-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

troller for a dynamo-electric machine. This patent is now owned by the complainant, who by its bill of complaint alleges that it has been infringed by the defendant. The defendant on its part alleges that the complainant's patent is invalid, or, at all events, that it has not infringed it. Of its 10 claims, No. 6 only is in controversy. It reads as follows:

"6. In a series-parallel controller, the combination with a contact-cylinder of a connecting-plate thereon against which contact-pieces are adapted to bear, a plate of magnetic material beneath said contact-plate and a magnet having its poles in proximity to said plate whereby the effect of said magnet may be intensified and interrupt any are which may be formed on breaking of the connections between the contact-pieces and their connecting-plate."

As just indicated, many of the claims and very much of the specification have little, if any, bearing upon the question now before the court. The part of the patent with which we are particularly concerned has to do with a "magnetic blow-out."

It is well known that in making circuit changes by means of a controller arcs of a destructive character are formed, and claim 6 is intended to cover a construction which will prevent, or at least minimize, such effects. The intensity of the arc is varied according to the volume of the current, its voltage, pressure, and other factors. The controller is a switching device comprising a series of fixed contact fingers, permanently attached to the inside of a casing which co-operates with a corresponding number of movable switching plates mounted upon a shaft, which shaft extends through the top of the casing, where it has attached to it a handle by which the controller is operated. The chief element of claim 6 is a blow-out magnet for the purpose of extinguishing arcs which are formed whenever an electric circuit is broken. The principle that a magnetic field applied to such an arc forces the arc out of the field and away from the contacts, and thereby extinguishes it, has long been known and applied. It is also elementary that to strengthen the magnetic field it is only necessary to place an iron armature near to the poles of the magnet, and that, the nearer the armature is to the poles, the stronger and more localized will be the magnetic field.

In view of the disclosures of the prior art to which reference will shortly be made, it is manifest that the complainant is not entitled to any broad construction of the claim in suit. The patentees chose a particular place for the location of their magnet and its armature. Other inventors had chosen different places, and others yet to follow will doubtless select still other and different locations. The function of the interposed magnetic material, however, is always to concentrate the lines of force at a desired point, and the accomplishment of this object in the case of a street railway controller presented no new problem. The case of Thompson-Houston Electric Co. v. Nassau Electric R. Co., 107 Fed. 277, 46 C. C. A. 263, is both instructive and conclusive upon that and other points. The magnet and armature are always located at a point claimed to be the most effective for extinguishing an arc. Nor does the fact that the claim in controversy applies the principle to a series-parallel controller alter the situation.

An electric arc is an electric arc, and, although it may vary in magnitude, still it is always controlled by the same method. The magnetic field does not distinguish between arcs formed in one way and arcs formed in another way. Properly applied, it always produces an effect of the same character upon an electric arc, however formed. As already stated, the novel feature of the claim, if any, relates to the location of the magnet and "magnetic material" or armature. One of the complainant's experts practically admits this in the following language:

"Knight & Darley obtained these results, according to the disclosures of the patent in suit, by a new form of construction for the contact-cylinder, in combination with a blow-out magnet. They combine with the contact-cylinder a plate of magnetic material, such as iron, which in combination with the blow-out magnet, produces a compact and efficient controller. In other words, they so construct their contact-cylinder and relate it to the blow-out magnet that a path of good magnetic conductivity is provided for the blow-out flux."

And the defendant's expert states it clearly and concisely as follows:

"The particular feature of the Knight & Darley apparatus as embodied in claim 6 is not the broad use of a magnetic blow-out in a controller for electric motors, nor is it the particular method of control, whether series-parallel, or by other means. The art contained controller structures with magnetic blow-outs, with controllers that were sometimes of the series-parallel type, and sometimes of other types. The particular thing that is the essential feature of the claim is the use of an iron armature opposite the two poles of a magnet so disposed that the magnetism flowing from the magnet poles should be strengthened at the points where a strong field is needed. The use of armatures opposite the poles of magnets for modifying the strength of the magnetic field between the magnet poles, and for the concentration of magnetic fields opposite the poles, was commonplace in the art long before the date of the application for the patent in suit."

All that Knight & Darley sought to do in this connection was to increase the strength of the magnetic field and localize it at the point where they deemed it would be effective to minimize the destructivity of the electric arc. But this had been done time and again in the art. Indeed, it was so old that it is difficult to discover anything of invention in this claim, for instance, in the Potter patent No. 524,396, issued August 14, 1894, for a controller for electric motors. The patentee states that one of his improvements was "a modification of the magnet used to extinguish arcs on the contact terminals," which he describes as follows:

"For interrupting any arc which may be formed upon breaking contact between any of the fingers I and the contact-plates H, I have provided an electro-magnet K which is placed in the inclosing case adjacent to the switch-cylinder at its middle point and which is provided with a pivoted pole piece N extending laterally in each direction from the core of the magnet, and terminating at a point adjacent to the line of contact finger I. The opposite end of the magnet core rests against the back plate of the inclosing case, so that the latter forms a part of the magnetic circuit. A ridge O is cast on the back plate of the inclosing case D at a point opposite the pivoted pole piece N. By this arrangement, the point at which the circuit is broken between fingers I and contact-plate H is directly in the line of the magnetic circuit, and any arc will be interrupted, but to assist the magnetic effect upon the arc, I have provided at each finger I an arc deflector P consisting

of a small chute or chimney of insulating material into which the arc is forced by what may be termed the 'magnetic blast.' "

The blow-out magnet of this patent was designed and intended to extinguish arcs, and its relation to the cylinder, together with the pole piece O, were for the very purpose of localizing the magnetic field at the point where the arcing occurred.

Then, too, the Blood patent, No. 508,674, of November 14, 1893, had in view the same object as the patent in suit. The inventor says:

"The object of the present invention is to obviate the occurrence of sparking or arcing between the adjoining contact-plates of rheostats, or other resistance controllers for electric circuits, which arcing, when the potential difference between the contact-plates is rather high, may become a source of trouble by burning the metal and thus preventing free passage of the contact block or brush over the plates. To this end, I provide a magnet or system of magnets having poles arranged adjacent to the successive intervals between the contacts so that, when the contact arm leaves one plate to make contact with the next, it forms a more or less complete magnetic bridge between the adjacent magnet poles. In this way, a strong and intense magnetic field is concentrated at the point where the current is interrupted which prevents any continued arcing thereat."

And after thus describing his method he adds:

"It therefore forms a more or less complete magnetic bridge between those poles immediately adjacent to the arm and thereby gives rise to an intense magnetic field at this point which will extinguish any arcs which may form upon the passage of the contact block from one plate to another."

This patent apparently never came into general use, although a number of such controllers were made and used, whereupon the Potter patent was issued and supplanted it. It nevertheless discloses substantially the complainant's device. It further appears in the case, and is uncontradicted, that Mr. Knight, one of the patentees of the patent in suit, was thoroughly conversant with all that Blood did, and that Blood reported to Knight daily of the progress of his work, and advised with him in respect thereto. The chief objection to the Blood patent doubtless arose from the fact that the switch consisted of a flat plate with an arm adapted to move over the contacts, a form of construction obviously unfitted for use on the platform of a trolley car. The patent in suit attaches its armature to a movable cylinder and the Blood patent to a movable arm, and therein lies the chief difference between the devices. Several other patents are relied upon by the defendant to show anticipation, but sufficient has already been said to show that the complainant's device, if upheld, must, as already stated, be upheld in the very form in which it is shown. To give the claim in issue a broad construction would not only be unwarranted, but effectually block any further progress in the art. The claim, however, when narrowly construed and restricted to its exact terms, may perhaps be supported; but, thus construed and restricted, the defendant has not infringed it. Its construction, while undoubtedly designed and intended for the same purpose as the complainant's is essentially unlike it. The defendant's controller is built in conformity with patent No. 873,805 issued December 17, 1907, to one Stull, and the defendant is entitled to the benefit of the presumption of validity

which attaches thereto. It shows two blow-out magnets, one located at the top and one at the bottom of the controller, and in speaking of them and his "arrangements for preventing sparking or destructive arcing at the controller contacts" Stull says that he accomplishes it "by providing a plurality of blow-out magnets magnetically in parallel and supplying a common magnetic circuit, the ends of the magnet cores forming bearings for the controller drum." The single magnet of the patent in suit, however, is outside of the controller structure, with an armature immediately inside of the contacts, which bridges the space between the point of the magnet, which poles are also separate from the other parts of the controller. In the defendant's magnetic system, the shaft of the controller forms one of the magnetic poles and the iron back of the controller-casing the other. This use of the shaft is novel. To convey the lines of the magnetic force to the places where the circuit is broken, the defendant employs strips of iron extending from one of the pole pieces inside of the front of the casing. It also provides plugs of magnetic material which to some extent decrease the length of the air path of the magnetic flux. These plugs are in close proximity to the shaft, and have affixed to them at their ends, small plates, or extensions, and it is these plates or extensions which it is claimed correspond with the armature of the patent in suit. If that were admitted, which it is not, it would still be true that the defendant's device shows far more of novelty and invention than does the patent in suit, for the armature or plate, as it is called, of that patent is of the oldest form and merely spans the space between the poles, thereby conveying the lines of magnetic force from one pole directly to the other, and so concentrating and intensifying the magnetic field. The series of extensions or plates in the defendant's device, on the other hand, adopting the language of Stull's specification, "serve to spread out the magnetic field across the whole width of the contact fingers." There is, moreover, no plate of magnetic material beneath the contact plate as required by claim 6, but, were the extension or plate of the defendant's device so deemed, their function is not the same, since that of the armature of the patent in suit is to concentrate, while that of the defendant is to "spread out" the magnetic field. That part of the specification of the Stull patent which deals with the plugs, and their small plates or extensions, says:

"Plugs K of iron or other magnetic material are embedded in the controller drum A and extend inward nearly to the insulation around the iron shaft D of said drum and outward toward the contacts B, but are not mounted on and do not touch the shaft itself. These plugs are located so as to be just beneath the circuit breaking points of the controller or the points where the contact fingers C leave the contacts B and are riveted to small plates K', also of magnetic material, these plates serving to spread out the magnetic field across the whole width of the contact finger. The plates and attached plugs are removably fastened to the contact segments B, as shown by screws K. These plugs, therefore, are common pole pieces of the two blow-out magnets, and serve individually to concentrate and direct the lines of force at those points respectively where arcing is liable to occur and collectively to diminish the reluctance of the magnetic circuit."

The defendant's plates have a function directly opposite to the plate of the patent in suit. Moreover, the magnetic flux in the Knight & Darley patent passes through the plate longitudinally, as it were, while in that of Stull the direction is at a right angle to the plate. This is clearly shown by complainant's drawings, Exhibits Nos. 5 and 6. Finally, the patent in suit has never had any considerable use, and is utterly impracticable, and useless without the insertion of insulating material between the contact plate and the armature, which, however, is not provided for by the claim or indicated in the specification.

More might be said upon the question of noninfringement were it deemed necessary, which it is not, in view of the art at the time of issue of the Knight & Darley patent, the restrictions which must be attached to claim 6 in order to sustain it, and the manifestly dissimilar organization of the magnetic system of defendant's apparatus from that of the complainant.

The bill of complaint will be dismissed, with costs.